IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-20133-JWL |
| | ) | |
| GLADSTONE McDOWELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

In this multi-defendant case, a jury convicted defendants Dwight Rhone, Sheldon McIntosh, Samora McIntosh, and Ibrahima Kane of one count each of a conspiracy to distribute and possess with intent to distribute at least 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846. This matter comes before the Court on Samora McIntosh's motion for a judgment of acquittal or for a new trial (Doc. # 1025); Ibrahima Kane's motion for a judgment of acquittal or for a new trial (Doc. # 1028), which incorporates Samora McIntosh's motion and includes additional argument; and pro se motions by Dwight Rhone (Doc. # 1040) and Sheldon McIntosh (Doc. # 1041), by which those defendants join in Samora McIntosh's motion (although, presumably, seeking relief for themselves). For the reasons set forth below, the Court **denies** these motions.

As a preliminary matter, all four motions are untimely to some degree. Fed. R. Crim. P. 29(c)(1) provides that a defendant may move for a judgment of acquittal within

14 days after the jury is discharged. Fed. R. Crim. P. 33(b) provides that a motion for a new trial (other than one based on newly-discovered evidence) must be filed within 14 days after the guilty verdict. In this case, the jury returned guilty verdicts on April 28, 2011, and the jury was discharged on May 2, 2011. The pro se motions were not filed until May 23, 2011; thus, those motions are untimely in their entirety. The motions filed by Samora McIntosh and Ibrahima Kane were filed on May 16, 2011; thus, those motions are untimely to the extent that they seek a new trial.

Fed. R. Crim. P. 45(b)(1)(B) allows the Court to extend these deadlines if the parties failed to act timely because of excusable neglect. None of these defendants has made such a showing; indeed, none of the defendants filed a reply brief even after the Government raised the issue of timeliness (with respect to the pro se motions) in its response brief. Therefore, only the motions by Samora McIntosh and Ibrahima Kane for a judgment of acquittal are timely.[1]

In seeking a judgment of acquittal, defendants argue that the evidence was insufficient to support the convictions. In resolving such a challenge to the sufficiency of the evidence, the Court must determine whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

---

[1]The only basis cited by these defendants for a new trial is the insufficiency of the evidence (or the Government's failure to prove the charged conspiracy). Thus, the motions for a new trial also fail on the merits for the same reasons that the motions for judgment of acquittal fail. Similarly, because the pro se motions merely joined in the motion by Samora McIntosh, those motions would also fail on the merits even if they were timely.

2

elements of the crimes beyond a reasonable doubt." *United States v. Doddles*, 539 F.3d 1291, 1293 (10th Cir. 2008) (quotation omitted). The Court must "resolve any possible conflicts in the evidence in favor of the Government and assume that the jury found that evidence credible." *Id.* at 1293-94 (citation omitted). "While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Burkley*, 513 F.3d 1183, 1188-89 (10th Cir. 2008) (internal quotation omitted).

To prove the conspiracy allegation against a particular defendant, the Government was required to show that "(1) two or more persons agreed to violate the law; (2) the defendant knew the essential objectives of the conspiracy; (3) the defendant knowingly and voluntarily participated in the conspiracy; and (4) the alleged coconspirators were interdependent." *United States v. Acosta-Gallardo*, __ F.3d __, 2011 WL 3805764, at *12 (10th Cir. Aug. 30, 2011) (quoting *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006)). The Court concludes that the Government did present evidence of these elements that supports the jury's convictions of these defendants.

In this case, the Government presented ample evidence of a conspiracy to distribute marijuana headed by Gladstone McDowell, Curtis Pitter, and Devon Thomas. Moreover, there was sufficient evidence of these defendants' participation in that conspiracy. Viewed in the light most favorable to the Government, that evidence includes the following: These defendants were arrested in Arizona at a house with a large

3

amount of marijuana, a large amount of cash, and materials for packaging the marijuana for shipment. The three defendants other than Dwight Rhone had grease, which is used in packaging marijuana, on their shirts. Devon Thomas testified that Dwight Rhone was an original 10 percent partner in the drug-trafficking organization; that all four of these defendants were involved in the conspiracy and received money for their participation; and that he put money into the bank accounts of Sheldon McIntosh and Samora McIntosh. The testimony that these defendants traveled to Arizona to package marijuana for shipment back to Kansas City was corroborated by evidence that defendants took airplane flights between Kansas City and either Arizona or Las Vegas in 2006 and 2007, almost always accompanied by another member of the conspiracy. Bank records for Sheldon McIntosh showed large deposits despite his lack of legitimate income. After the arrest in Arizona, Curtis Pitter arranged for assistance and paid for legal counsel for these defendants. Defendants had close relationships to other members of the conspiracy. This evidence is sufficient to support the jury's findings that these defendants were indeed members of the conspiracy.

Defendants also dispute that the Government proved their participation in a conspiracy involving more than 1,000 kilograms of marijuana. They note that when they were arrested in Arizona, only 630 pounds (approximately 286 kilograms) of marijuana and $233,000 (representing proceeds of only 233 pounds or 106 kilograms of marijuana) were seized. As the jury was instructed, however, a member of the conspiracy might play only a minor role, and each member is held responsible for the acts of other

4

members in furtherance of the conspiracy, even if the member is not present for or aware of those other acts. Although the amount of marijuana associated with each defendant may be relevant at sentencing, the jury properly considered whether the entire conspiracy involved more than 1,000 kilograms of marijuana. *See United States v. Stiger*, 413 F.3d 1185, 1192-93 (10th Cir. 2005). In this case, the Government presented evidence from which the jury could reasonable conclude that the conspiracy as a whole involved more than 1,000 kilograms of marijuana. For instance, ledgers traced to members of the conspiracy contained figures that suggested activity involving over 2,000 kilograms of marijuana. The jury also heard evidence of other seizures of drugs and money, as well as testimony that large amounts of marijuana were packaged and sent to Kansas City on a regular basis over several years.

Defendants also argue that they did not participate in the conspiracy after they were arrested in May 2007, and therefore that they withdrew from the conspiracy at that time. The Court rejects this argument, as withdrawal is not a defense to a charge of conspiracy under Section 846. "Because there is no overt act requirement under the drug conspiracy statute, withdrawal cannot relieve a defendant of criminal responsibility for a conspiracy charged under § 846 . . . ." *United States v. Williams*, 374 F.3d 941, 949-50 (10th Cir. 2004). In addition, to withdraw from a conspiracy, an individual must act affirmatively by "either making a clean breast to the authorities or communicating his withdrawal in a manner reasonably calculated to reach co-conspirators," *United States v. Record*, 873 F.2d 1363, 1369 (10th Cir. 1989) (quoting *United States v. Parnell*, 581

F.2d 1374, 1384 (10th Cir. 1978)), and defendants failed to offer any evidence to meet their burden to show that they made such an affirmative act. *See id.* ("A defendant bears the burden of establishing withdrawal from a conspiracy.").

The Court also rejects defendants' argument that because they did not participate in the conspiracy after their arrest, the case presented to the jury improperly varied from the charges in the indictment. The indictment did not allege that each defendant's participation extended until 2009; rather, it alleged that a conspiracy existed until that date. Defendants have not disputed that the Government presented sufficient evidence that a conspiracy existed until 2009; thus, there is no basis to find a fatal variance here.[2]

The Court also rejects defendants' argument that the Government failed to present sufficient evidence of interdependence. With respect to this element of interdependence, the jury was instructed as follows:

> To be a member of the conspiracy, a defendant need not know all of the other members or all of the details of the conspiracy, nor the means by which the objects were to be accomplished. Each member of the conspiracy may perform separate and distinct acts. It is necessary, however, that for the defendant to be a member of the conspiracy, the government must prove beyond a reasonable doubt that the defendant was aware of the common purpose and was a willing participant with the intent to advance the purposes of the conspiracy. In other words, while a defendant need not participate in all the acts or statements of the other members of the conspiracy to be bound by them, the acts or statements

---

[2]By its verdicts, the jury rejected defendants' argument at trial that they participated in a conspiracy separate from the conspiracy charged in the indictment. Defendants have not renewed that argument in their present motions. Regardless, from the evidence at trial, the jury could reasonably have found a single conspiracy involving these defendants.

6

must be interdependent so that each member of the conspiracy depends upon the acts and statements of the other conspirators to make the conspiracy succeed.

The Tenth Circuit recently stated the law with respect to interdependence as follows:

[I]t is well-established that a conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy. The evidence must show that a conspirator has at least a general awareness of both the scope and the objectives of the conspiracy.
. . .

Moreover interdependence may be shown if a defendant's activities facilitated the endeavors of other alleged co-conspirators or facilitated the venture as a whole. Co-conspirators are interdependent when they intend to act together for their shared mutual benefit within the scope of the conspiracy charged.

*Acosto-Gallardo*, __ F.3d __, 2011 WL 3805764, at *12-13 (internal citations and quotations omitted, emphasis omitted).

In this case, the Government presented evidence that these defendants were involved in the conspiracy at least by packaging marijuana for shipment to Kansas City and that they benefitted from the conspiracy by receiving payment for that work. Certainly such work to deliver the drugs to a location for their eventual distribution facilitated this drug-trafficking venture for the shared mutual benefit of the members of the conspiracy. Accordingly, the Court concludes that the evidence of interdependence was sufficient here.

Finally, defendants argue that the Government did not establish that venue was proper here with respect to the charges against them, in light of the fact that these defendants were not linked to the State of Kansas. Venue is ordinarily a question for the

7

jury, and it need only be shown by a preponderance of the evidence. *Id.* at *7. "Venue for a conspiracy is proper in any jurisdiction where an overt act in furtherance of a conspiracy was committed by any of the conspirators, even if the defendant has neither been to the jurisdiction nor committed any acts there." *Id.* (internal quotation omitted). In this case, the jury was given a specific venue instruction, and thus, by its verdicts, it found that venue did exist with respect to each of these defendants.

The Government presented evidence in this case that drugs were shipped to Kansas City through a hub in Kansas, where marijuana was seized on one occasion; that acts of money laundering with respect to proceeds of the conspiracy took place in Kansas; and that defendant Delroy Buckley made sales and stored marijuana and proceeds in Kansas.[3] Accordingly, the Court concludes that the Government presented sufficient evidence from which the jury reasonably could have determined, by a preponderance of the evidence, that venue was proper here. The Court therefore denies each defendant's motion in its entirety.

IT IS THEREFORE ORDERED BY THE COURT THAT the motions for a judgment of acquittal or for a new trial filed by defendants Samora McIntosh (Doc. # 1025), Ibrahima Kane (Doc. # 1028), Dwight Rhone (Doc. # 1040), and Sheldon

---

[3]Although in acquitting Mr. Buckley of the conspiracy charge, the jury found that he was not a member of the conspiracy beyond a reasonable doubt, it still could have found that he was a member by a preponderance of the evidence, in accordance with the standard it was instructed to apply to the question of venue.

McIntosh (Doc. # 1041) are **denied**.

IT IS SO ORDERED.

Dated this 6th day of September, 2011, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
